**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **Byron Kent Freeman,** | ) | **Case No. 25-12700-SAH** |
| **Debtor.** | ) | **Chapter 7** |
| | ) | |
| | ) | |
| **William M. Word,** | ) | |
| **Plaintiff** | ) | **Adv. Proc. No. ____________** |
| **v.** | ) | |
| | ) | |
| **Byron Kent Freeman,** | ) | |
| **Defendant.** | ) | |

**COMPLAINT SEEKING TO DETERMINE DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. §§ 523(a)(2), (4), (6) AND OBJECTING TO DISCHARGE OF DEBTOR PURSUANT TO 11 U.S.C. §§ 727(a)(2), (3), (4), and (5)**

William M. Word, (hereinafter "Plaintiff"), creditor and party-in-interest in the above-captioned bankruptcy files this adversary proceeding seeking the following relief: (i) an Order excepting certain debts from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), (6) and; (ii) an Order denying Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4) and (5). Plaintiff in the above-captioned adversary proceeding hereby alleges, upon information and belief, as follows:

## Jurisdiction and Venue

1. This is a core proceeding and the Court has jurisdiction of the parties and subject matter pursuant to 28 U.S.C. §§ 157(2)(I), (J); and 28 U.S.C. § 1334.

2. Venue is proper in this district under 28 U.S.C. § 1409(a). This adversary proceeding is related to a bankruptcy case under Chapter 7 that is pending in this district [Case No. 25-127000-SAH].

3. This adversary proceeding is commenced pursuant to 11 U.S.C. § 523(c); 11 U.S.C. § 727(c) and the Federal Rules of Bankruptcy Procedure Rules 4004, 4007 and 7001(d), (f), and (g).

4. Plaintiff consents to the entry of final orders or judgment by the bankruptcy court.

**Parties and Procedural History**

5. William M. Word ("Plaintiff") is an individual unsecured creditor with claims against the Debtor in the above-captioned bankruptcy case. Plaintiff is a retiree and former educator who served Oklahoma's students and families by working in the public school system for over forty years. Plaintiff and Debtor had a financial advisor-client relationship from 2012 through 2023.

6. Byron Kent Freeman ("Defendant" or "Debtor") is the individual Chapter 7 debtor in the above-captioned bankruptcy case. Debtor served as Plaintiff's registered financial advisor from 2012 through 2023.

7. On August 29, 2025, (hereinafter "Petition Date") Debtor filed a voluntary petition (hereinafter "Petition") under Chapter 7 of the Bankruptcy Code. [Case No. 25-12700-SAH, Dkt. No. 1].

8. On September 2, 2025, Kim Kramer was appointed the Chapter 7 Trustee (hereinafter "Trustee").

9. On October 1, 2025, Debtor appeared for the 341 meeting and Debtor answered questions under oath.

10. On December 10, 2025, Debtor appeared for a 2004 examination and answered questions under oath.

## Factual Background of Claims

***Missouri Entities***

11. Debtor served as Plaintiff's registered investment advisor and made investment recommendations purportedly for Plaintiff's benefit.

12. As a registered investment advisor Debtor owed Plaintiff a fiduciary duty and had record keeping requirements under Oklahoma law. *See* Okla. Admin. Code 660: 11-7-41(a), 42(b).

13. In his capacity as a fiduciary, Debtor recommended Plaintiff invest in Missouri limited liability companies which purported to own portions of third-party life insurance policies.

14. Based on Debtor's actions, which included false pretenses, false representations and actual fraud, Plaintiff invested in four Missouri limited liability companies: (1) Shing Missouri Twenty Six, LLC; (2) GIS Missouri 5, LLC; (3) Shing 17, LLC; and Shing Missouri Twenty One, LLC (hereinafter together "Missouri Entities" or singular "Missouri Entity").

15. Upon information and belief, Debtor is the owner and member-manager of the Missouri Entities.

16. Debtor did not list the Missouri Entities on his bankruptcy schedules.

17. Debtor represented to Plaintiff that in exchange for Plaintiff's money, Plaintiff would receive 10% interest compounded annually on his investment until the death of the insured covered by the third-party life insurance policies. Upon the death of the insured, Plaintiff would receive a certain percentage of the death-benefit based on the amount of his investment.

18. Further, Debtor represented that the money Plaintiff invested would be used to pay premiums for the third-party life insurance policies owned by each Missouri Entity.

19. At the time Debtor made the above representations to Plaintiff, he had no intention to perform.

20. Upon information and belief, Debtor failed to utilize Plaintiff's money as represented and utilized it to perpetuate a Ponzi scheme involving Debtor's other clients.

21. Plaintiff relied on Debtor's representations that the money invested with Debtor would be used to pay premiums and would be managed for his personal benefit.

22. Debtor failed to make premium payments to the Missouri Entities.

23. Upon information and belief, during April or May of 2025, the Missouri Entities lost control of their third-party life insurance policies due to Debtor's failure to make premium payments. This caused Plaintiff to lose his investment in the Missouri Entities.

***Tenzer Policy***

24. In his capacity as a fiduciary, Debtor recommended Plaintiff invest in a third-party life insurance policy issued by New York Life Insurance and Annuity Corporation which covered the lives of Marvin L. Tenzer and Sandra L. Tenzer (hereinafter "Tenzer Policy") and which had a death-benefit of $2,500,000.00.

25. Between August 2019 through November 2022, Plaintiff "invested" a total of $775,000.00 in the Tenzer Policy relying on Debtor's representations that Plaintiff would: (i) receive 10% interest on the investment compounded annually, (ii) receive a 31% ownership in the Tenzer Policy death-benefit, and (iii) not be responsible for paying the premiums.

26. One of the investment agreements for the Tenzer Policy was a promissory note for $400,000.00. Per the terms, Debtor borrowed $400,000.00 from Plaintiff and promised Plaintiff a return of 10% annually.

27. Upon information and belief, Debtor sold portions of the Tenzer Policy to other parties which exceeds 100% of the policy death-benefit.

28. Upon information and belief, at the time Debtor made the representations listed above, Debtor knew that his representations were false, had a plan to, or already had, oversold the

Tenzer Policy, and had no intention of repaying the loan or providing the death-benefit upon the insured's death.

29. Debtor has owned the Tenzer Policy in his individual capacity since November 2019. At that time Debtor executed a Transfer of Ownership form for the Tenzer Policy from Josh Zabrocki to Debtor. Debtor listed himself as the new owner of the Tenzer Policy, which included providing his personal address, social security number, and having his wife, Karen Freeman, as the successor. Upon information and belief, Plaintiff believes the Tenzer Policy remains titled in Debtor's name.

30. Debtor failed to list the Tenzer Policy in his bankruptcy schedules.

31. On or about, December 28, 2023, Debtor embezzled/stole $40,000.00 in the form a "partial cash withdrawal" from the Tenzer Policy for his own benefit. This reduced the death-benefit of the Tenzer Policy and harmed Plaintiff.

32. Debtor violated his fiduciary duties: (i) by taking a personal loan from Plaintiff, (ii) by willfully diminishing the value of Plaintiff's investment in the Tenzer Policy, and (iii) by using the $40,000.00 for Debtor's own benefit.

***Premier Factoring 2***

33. In his capacity as a fiduciary, Debtor recommended Plaintiff invest in promissory notes for a construction factoring company Premier Global Corporation.

34. Debtor promised 10% annual interest on the investment which would be used to purchase factored invoices in the construction industry.

35. Upon information and belief, when the Debtor made these representations he knew they were false.

36. Further, Debtor did not disclose that his wife, Karen Freeman, was making substantial commissions on the sale of these investments.

37. Upon information and belief, Karen Freeman received over $1,000,000.00 in commissions from the sale of the promissory notes which were recommended and sold by Debtor.

38. Upon information and belief, Debtor did not use Plaintiff's money as represented and embezzled the money from Plaintiff and used it for his own benefit.

39. Currently, Debtor and his wife, are civil defendants in a lawsuit with the Oklahoma Department of Securities (Oklahoma County Case No. CJ-2022-5066) for their participation in a Ponzi scheme related to Premier Global Corporation promissory notes.

40. On October 1, 2025, during the creditors' meeting, Debtor disclosed additional interests in business entities, financial assets, and third-party life insurance policies that were not listed in Debtor's bankruptcy schedules.

41. On December 10, 2025, during a 2004 examination, Debtor disclosed: (i) further interests in unincorporated business entities, (ii) he is the owner of the Tenzer Policy and (iii) the Tenzer Policy is active.

**Count 1 - Determination Excepting Debt From Discharge Under 11 U.S.C. § 523(a)(2) Due to Debt Arising from Money Obtained by False Pretenses, False Representation, and Actual Fraud.**

42. Plaintiff repeats and realleges paragraphs 1 through 41 hereof, as if fully set forth herein.

43. Between 2013 and 2023, Debtor intentionally engaged in a scheme to obtain money from Plaintiff under false pretenses, using false representations, and by actual fraud, related to investments in the Missouri Entities, Tenzer Policy, and Premier Global Corporation.

44. As part of that scheme, Debtor would periodically recommend additional investments as well as conduct annual meetings to discuss Plaintiff's current investments.

45. Upon information and belief, Debtor would present false information regarding the additional investment opportunities, including the terms of the investments and how Plaintiff's money would be utilized.

46. Upon information and belief, during these annual meetings, Debtor intentionally presented false information regarding the health of Plaintiff's investments in order to gain his trust and confidence and continue the fraudulent scheme to take Plaintiff's money for Debtor's own use and benefit.

47. Plaintiff relied on Debtor's representations that: (i) Debtor was acting in a fiduciary capacity when recommending investments, (ii) the promised interest payments and percentage ownership in third-party life insurance policies were correct, (iii) Debtor would use Plaintiff's money to pay premiums on the third-party life insurance policies, and (iv) Debtor would use the money for Plaintiff's benefit.

48. Debtor knew that the representations to Plaintiff were false when he made them and Debtor intended for the representations to be relied upon by Plaintiff.

49. Plaintiff suffered harm due to Debtor's false representations and Debtor obtained money as a result of such misrepresentations.

50. Plaintiff justifiably relied on Debtor's actions, as he served as a registered financial advisor who had a fiduciary duty to act in Plaintiff's best interests and the annual reports showed Plaintiff's investments were safe and increasing in value consistent with Debtor's representations.

51. Debtor listed Plaintiff as a business creditor in his Petition. Debtor listed the amount owing to Plaintiff as "Unknown".

52. Debtor is indebted to Plaintiff in the amount of $3,832,551.35.

53. Debtor's obligations to Plaintiff are not dischargeable pursuant to 11 U.S.C. § 523(a)(2).

**Count 2 - Determination Excepting Debt From Discharge 11 U.S.C. § 523(a)(4) for Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny.**

54. Plaintiff repeats and realleges paragraphs 1 through 53 hereof, as if fully set forth herein.

55. Debtor had a fiduciary duty to Plaintiff by virtue of investment advisor-client relationship. *See* Okla. Admin. Code 660: 11-7-42(b) ("Investment advisers and investment adviser representatives shall act in accordance with their fiduciary duty to their clients[.]")

56. Prior to the Petition Date, Debtor engaged in a course of conduct amounting to fraud, embezzlement and/or larceny while acting in a fiduciary capacity.

57. Upon information and belief, Debtor presented falsified information regarding the financial health of Plaintiff's investments during annual meetings. Debtor did so to gain Plaintiff's confidence and trust so Plaintiff would continue "investing" with Debtor.

58. Upon information and belief, Debtor acted intentionally by presenting investments to Plaintiff with terms that were false to induce Plaintiff to continue to invest with Debtor.

59. On or about December 28, 2023, Debtor embezzled $40,000.00 from the Tenzer Policy investors and reducing the death benefit value of the Tenzer Policy.

60. Debtor's personal loan from Plaintiff in the amount of $400,000.00 was in violation of Oklahoma law. *See* Okla. Admin. Code 660: 11-7-42(b)(6) (prohibiting investment advisors from taking personal loans from clients.).

61. Upon information and belief, Debtor used Plaintiff's money for his own benefit and did not utilize it to invest on behalf of Plaintiff.

62. As a result of Debtor's conduct, Debtor is indebted to Plaintiff in the amount of $3,832,551.35.

63. Debtor has listed Plaintiff as a business creditor in his Petition in the amount of "Unknown."

64. The debt(s) are not dischargeable pursuant to 11 U.S.C. § 523(a)(4).

**Count 3 - Determination Excepting Debt From Discharge 11 U.S.C. § 523(a)(6) For Willful and Malicious Injury by the Debtor to Another Entity or Property of Another Entity.**

65. Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if full set forth herein.

66. On or about December 28, 2023, Debtor willfully and maliciously caused injury to Plaintiff by embezzling $40,000.00 from the Tenzer Policy and reducing the death benefit of the Tenzer Policy.

67. Debtor willfully and maliciously used Plaintiff's money for Debtor's personal benefit instead of making the life-insurance premium payments to the Missouri Entities. Debtor caused Plaintiff to lose his investment in the Missouri Entities resulting in damages to Plaintiff.

68. Debtor willfully and maliciously caused injury to Plaintiff by "investing" his money in promissory notes for Premier Global Corporation, and failing to disclose Debtor's wife would receive commissions for the sale.

69. Debtor's debt to Plaintiff is not dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**Count 4 - Objection to Debtor's Discharge under 11 U.S.C. § 727(a)(2) For Transferring, Removing, or Concealing Property of the Debtor, within One Year of Filing of the Petition.**

70. Plaintiff repeats and realleges paragraphs 1 through 69 hereof, as if fully set forth herein.

71. A discharge is not granted to a Chapter 7 debtor that intends to hinder, delay, or defraud a creditor or the custodian of the property by transferring, removing, destroying, mutilating, or concealing: (a) property of the debtor during the year preceding the petition date; or (b) property of the estate after the petition date. *See* 11 U.S.C. § 727(a)(2).

72. Debtor intended to hinder, delay, or defraud the creditors and the custodian of property of the estate by transferring, moving, and/or concealing property of the Debtor during the year preceding the Petition Date and after the Petition Date by failing to list the Tenzer Policy and the Missouri Entities on his bankruptcy schedules.

73. Upon information and belief, Debtor failed to identify transfers of estate property that occurred within one year of the Petition Date.

74. Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2).

**Count 5 - Objection to Debtor's Discharge 11 U.S.C. § 727(a)(3) For Concealing, Destroying, or Falsifying Records or Failing Preserve Any Recorded Information, from Which Debtor's Financial Condition or Business Transactions Might Be Ascertained.**

75. Plaintiff repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein.

76. A discharge is not granted to a Chapter 7 debtor that, unjustifiably under the circumstances of the case, conceals, destroys, mutilates, falsifies, or fails to maintain or preserve records about the debtor's financial condition or business transactions. 11 U.S.C. § 727(a)(3).

77. "The scope of the debtor's duty to maintain records depends on the nature of the debtor's business and the facts and circumstances of each case. When a debtor carries on a business involving substantial assets, great and better record keeping is warranted." *In re Sears*, 565 B.R. 184, 189-90 (B.A.P 10th Cir. 2017).

78. Debtor served as Plaintiff's registered investment advisor in Oklahoma and had a duty to keep records related to the services provided to Plaintiff. *See* Okla. Admin. Code 660: 11-7-41. Record keeping Requirements.

79. Debtor unjustifiably concealed, falsified, and/or failed to maintain or preserve records about the Debtor's financial condition and assets including the Tenzer Policy and Missouri Entities, and other financial transactions/transfers.

80. Debtor's failure to keep records is evidenced by his failures to list the liabilities owed to Plaintiff along with liabilities to the following creditors: Auston Casey, Bill Bretches, Bill Stolz, Chuck and Betty Bowman, Corine Francis, Diane Musick, Ed Lemaster, John O'Dell, John P. O'Neill, Judy Cole, Pamela Chain, Roger Bechtel, Steve Daily, Thomas Pricket, and Wesley Willms.

81. Debtor failed to record or preserve records directly related to his fiduciary duty and record keeping obligations under Oklahoma law. Debtor's failure makes it impossible to ascertain his financial condition and or follow material business transactions.

82. Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(3).

**Count 6 - Objection to Debtor's Discharge 11 U.S.C. § 727(a)(4) for Knowingly and Fraudulently, In or In Connection with the Case – Made a False Oath or Account.**

83. Plaintiff repeats and realleges paragraphs 1 through 82 hereof, as if fully set forth herein.

84. A discharge is not granted to a Chapter 7 debtor that knowingly and fraudulently makes a false oath or account. 11 U.S.C. § 727(a)(4).

85. "[T]he purpose underlying Section 727(a)(4)(A) is to require nothing less than a full and complete disclosure of any and all apparent interests of any kind. The debtor's duty of disclosure requires updating the schedules as soon as reasonably practical after he or she becomes aware of any inaccuracies or omissions." *In re Brown*, 570 B.R. 98, 116 (Bankr. W.D. Okla. 2017) (internal citations omitted.).

86. Upon information and belief, Debtor made a false oath or account by failing to list in his bankruptcy schedules material assets such as the Tenzer Policy and Missouri Entities, as well as identify transfers made within one year of the Petition Date.

87. Debtor is therefore not entitled to a discharge under 11 U.S.C. § 727(a)(4).

**Count 7 - Objection to Debtor's Discharge 11 U.S.C. § 727(a)(5) For Failing to Explain Satisfactorily Any Loss of Assets or Deficiency of Assets to Meet Debtor's Liabilities.**

88. Plaintiff repeats and realleges paragraphs 1 through 87 hereof, as if fully set forth herein.

89. A discharge is not granted to a Chapter 7 debtor that fails to explain the loss of assets or deficiency of assets. 11 U.S.C. § 727(a)(5).

90. Debtor has failed explain the loss of assets, failed to explain the loss of ownership interests in the Missouri Entities and the Tenzer Policy or otherwise failed to explain the general deficiencies of assets to meet his liabilities.

91. Debtor is therefore not entitled to a discharge under 11 U.S.C. § 727(a)(5).

**Prayer For Relief**

Wherefore, Plaintiff respectfully requests that: (i) the Court determine that $3,832,551.35 of Plaintiff's claim is nondischargable pursuant to 11 U.S.C. § 523(a)(2), (4), (6); and (ii) Debtor be denied a discharge in this case pursuant to 11 U.S.C. § 727(a)(2), (3), (4), (5) and for such other and further relief as the Court deems just and proper.

Respectfully submitted,
*/s/ Maxfield J. Malone*
Kevin P. Doyle, OBA No. 13269
Maxfield J. Malone, OBA No. 34598
PRAY WALKER, P.C.
21 N. Greenwood Ave., Suite 400
Tulsa, OK 74120-1904
Tel: (918) 581-5500
Fax: (918) 581-5599
kdoyle@praywalker.com
mmalone@praywalker.com

*Attorneys for William M. Word*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of February, 2026, that I electronically transmitted a true and correct copy of the foregoing document to the Court Clerk using the CM/ECF system of filing, which will transmit a Notice of Electronic Filing to participants according to local procedures.

I further certify that a copy of the foregoing document was served on the following party by sending postage prepaid, in the United States Mail, by first-class mail on the 2nd day of February, 2026:

Byron Kent Freeman
3008 NE 130th Street
Edmond, OK 73013
*Debtor/Defendant*

O. Clifton Gooding
The Gooding Law Firm
204 North Robinson Avenue, Suite 1235
Oklahoma City, OK 73102
*Attorney for Debtor Byron Kent Freeman*

J. Clay Christensen
Jonathan M. Miles
Lisa M. Molsbee
Christensen Law Group, P.L.L.C.
3401 N.W. 63rd Street, Suite 600
Oklahoma City, OK 73116
*Attorney for Debtor*

*/s/ Maxfield J. Malone*
Attorney